UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| Candice Bradby, individually and on behalf of all others similarly situated, | 1:23-cv-00522 |
| Plaintiff, | Resident of Baltimore County |
| - against - | Class Action Complaint |
| Bimbo Bakeries USA, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Bimbo Bakeries USA, Inc. ("Defendant") manufactures and sells an "All Butter" cake purporting to get its entire butter taste from butter under the Entenmann's brand ("Product").

 

2. Defendant's website tells purchasers the "All Butter" cake has "the rich taste of pure butter."

ALL BUTTER LOAF CAKE

Indulge yourself with the rich taste of pure butter in our All Butter loaf.

1

3. However, the labeling is misleading because the "rich taste of pure butter" is derived in part from artificial flavoring, not disclosed on the front label.

## I. CONSUMER AVOIDANCE OF ARTIFICIAL FLAVORS

4. The representation of "All Butter," without qualifying statements about other flavoring sources, appeals to the more than seven out of ten consumers who avoid artificial flavors.

5. Artificial flavors are defined by federal and state regulations as obtained from non-natural, synthetic sources and made through chemical reactions. 21 C.F.R § 101.22(a)(1).

6. According to the Wall Street Journal, "[A]s consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.

7. A recent survey and report by Forbes magazine reported that over 80 percent of Americans avoid artificial flavors, believing they are less healthy than those without these chemical ingredients.

8. According to Nielsen's recent Global Health & Wellness Survey, the absence of artificial flavors is very important for over 40 percent of consumers.

9. The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors []" as bleak, given consumer opposition to these synthetic ingredients.

10. Consumer research firm Mintel declared that artificial flavors were "Public Enemy No. 1."

11. Surveys by the New Hope Network and Label Insight concluded that 71 percent and 76 percent of consumers avoid artificial flavors.

## II. DISCLOSURE OF FLAVORING SOURCE

12. The Food and Drug Administration ("FDA"), supported by studies of consumer psychology, recognizes that consumers rely on extrinsic cues such as visual information on

packaging to evaluate a product's characteristics, such as its texture and taste.[1]

13. Since extrinsic cues are linked to information presented on a label, "All Butter" tells purchasers the cake will contain butter as its main shortening ingredient and that its butter taste will only be from butter.[2]

14. In technical terms, this means that butter is the Product's "characterizing flavor" because the only flavor identified on the label is butter.

15. Flavoring experts describe butter's taste as "fatty," "smooth," "creamy," "rich" and "sweet," due to its volatile compounds, including acids, aldehydes, ketones and lactones.

16. Its short-chain fatty acids, such as butyric acid, give butter its fatty, smooth taste.

17. Its creamy taste owes in part to carboxylic acid, methyl ketones and lactones.

18. While the Product's ingredients include "BUTTER," it also lists "ARTIFICIAL FLAVORS."

INGREDIENTS: SUGAR, BLEACHED WHEAT FLOUR, EGGS, BUTTER, NONFAT MILK, WATER, FOOD STARCHMODIFIED (CORN), SOYBEAN OIL, LEAVENING (SODIUM ACID PYROPHOSPHATE, BAKING SODA, MONOCALCIUM PHOSPHATE), GLYCERIN, SALT, SORBITAN MONOSTEARATE, ARTIFICIAL FLAVORS, POTASSIUM SORBATE (PRESERVATIVE), POLYSORBATE 60, XANTHAN GUM, MONO- AND DIGLYCERIDES, PHOSPHORIC ACID, CELLULOSE GUM, SOY FLOUR, COCONUT FLOUR.
CONTAINS WHEAT, SOY, MILK, EGG, COCONUT.         R19-310

**INGREDIENTS:** SUGAR, BLEACHED WHEAT FLOUR, EGGS, BUTTER, NONFAT MILK, WATER, FOOD STARCH-MODIFIED (CORN), SOYBEAN OIL, LEAVENING (SODIUM ACID PYROPHOSPHATE, BAKING SODA, MONOCALCIUM PHOSPHATE), GLYCERIN, SALT, SORBITAN MONOSTEARATE, ARTIFICIAL FLAVORS, POTASSIUM SORBATE (PRESERVATIVE), POLYSORBATE 60, XANTHAN GUM, MONO- AND DIGLYCERIDES, PHOSPHORIC ACID, CELLULOSE GUM, SOY FLOUR, COCONUT FLOUR.

19. This "Artificial Flavors" ingredient refers to and includes artificial vanillin,

---

[1] Lancelot Miltgen, Caroline, Gaëlle Pantin Sohier, and Bianca Grohmann. "Communicating sensory attributes and innovation through food product labeling." Journal of food products marketing 22.2 (2016): 219-239.
[2] Blackmore, Helena, Claire Hidrio, and Martin R. Yeomans. "A taste of things to come: The effect of extrinsic and intrinsic cues on perceived properties of beer mediated by expectations." Food Quality and Preference 94 (2021): 104326; Okamoto, Masako, and Ippeita Dan. "Extrinsic information influences taste and flavor perception: A review from psychological and neuroimaging perspectives." Seminars in cell & developmental biology. Vol. 24. No. 3. Academic Press, 2013.

3

determined in part through laboratory analysis in accordance with accepted standards.

20. Artificial vanillin is made from petroleum products and subjected to numerous chemical reactions with synthetic reagents. 21 C.F.R. § 101.22(a)(1).

21. Vanillin is a phenolic aldehyde, known for its ability to provide smooth, creamy and fatty sensations when used in foods.

22. In fact, numerous companies sell a product which combines butter with vanillin, known in the trade as "pastry butter" or "bakers butter."

23. One example is "Eurovanillin Butter," a butter with particularly strong butter taste attributes due to added vanillin, such as fattiness and creaminess.[3]

24. This product adds vanillin to butter to enhance the fattiness in the end-product, so it has a more "buttery top note," which refers to its most significant flavor component.

25. Another manufacturer recognizes that the use of vanillin in baked goods enhances their "creamy scent."[4]

26. The trade journal Perfumer & Flavorist described vanillin as useful in contributing a "creamy-sweet aroma," a key butter attribute.[5]

27. Federal and identical state regulations require that because the added vanillin "simulates, resembles or reinforces the [Product's] characterizing [butter] flavor," the front label is required to state, "Artificially Flavored" next to "All Butter." 21 C.F.R. § 101.22(i)(2).

28. FDA Guidance further requires that where a food is labeled "Butter _____" or uses the word "butter" in conjunction with its name, like "All Butter" but "contains any artificial

---

[3] https://www.borregaard.com/markets/food/tailor-made-vanillin-creations/butter/
[4] https://www.zanchenglife.com/news-events/vanillin-applications-and-its-other-functions.html
[5] https://www.perfumerflavorist.com/flavor/sweet-applications/article/21861066/vanillin

butter flavor," this fact must be disclosed to consumers on the front label.[6]

29. The Product could have used flavoring from butter or other natural sources, but used artificial vanillin because it cost less and was more potent in providing the creamy, rich, smooth, sweet and fatty flavor notes butter is known for.

30. Competitor brands of butter cake truthfully disclose that even though it may be "made with real butter," its butter taste is partly because it is "Artificially Flavored."



Jurisdiction and Venue

31. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

32. The aggregate amount in controversy exceeds $5 million, including any statutory

---

[6] Compliance Policy Guide ("CPG"), Sec 505.200, "Butter" Featured in Product Name, Center for Food Safety and Applied Nutrition ("CFSAN"), Office of Regulatory Affairs, March 1988 citing 21 C.F.R. § 101.22(i)(2).

5

damages, exclusive of interest and costs.

33. Plaintiff is a citizen of Maryland.

34. Defendant is a Delaware corporation with a principal place of business in Pennsylvania.

35. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

36. The members of the classes Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of locations including grocery stores, convenience stores, warehouse club stores, drug stores, big box stores, and/or online, across the States covered by Plaintiff's proposed classes.

37. Venue is in this District with assignment to the Northern Division because a substantial part of the events or omissions giving rise to the claims occurred in Baltimore County, including Plaintiff's purchase and/or use of the Product, exposure to and reliance on the representations and omissions, and/or subsequent awareness they were false and misleading.

Parties

38. Plaintiff Candice Bradby is a citizen of Parkville, Maryland, Baltimore County.

39. Defendant Bimbo Bakeries USA, Inc., is a Delaware corporation with a principal place of business in Horsham, Pennsylvania, Montgomery County.

40. Defendant is the world's largest producer of baked goods, owned by a Mexican conglomerate.

41. Defendant owns the Entenmann's brand, known for using the highest quality ingredients.

42. Plaintiff purchased the Product on one or more occasions within the statutes of

limitations for each cause of action alleged, at stores including Safeway, 8858 Waltham Woods Rd, Parkville, MD 21234, between October 2022 and February 2023, among other times.

43. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $3.99 per 11.5 OZ, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

44. Plaintiff bought the Product at or exceeding the above-referenced price.

45. Plaintiff paid more for the Product than she would have paid had she known that "All Butter" was false and misleading or would not have purchased it.

46. Plaintiff expected that butter was the Product's main shortening ingredient and that its butter taste was only from butter.

47. Plaintiff expected that if the Product used artificial flavoring to make it seem like it had more butter than it did, this fact would be disclosed on the front label, like all other foods do.

48. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

49. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes and/or components.

50. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its composition.

51. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar baked goods represented as made with all butter, because she is unsure whether those representations are truthful.

52. If Defendant's labeling were to be truthful, Plaintiff could more confidently rely on

the labeling of other similar baked goods represented as made with all butter.

## Class Allegations

53. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Maryland Class**: All persons in the State of Maryland who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Kansas, Montana, Nebraska, North Dakota, Oklahoma and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

54. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

55. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

56. Plaintiff is an adequate representative because her interests do not conflict with other members.

57. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

58. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

59. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

60. Plaintiff seeks class-wide injunctive relief because the practices continue.

### Maryland Consumer Protection Act ("MCPA"), Commercial Law Art., Md. Ann. Code, § 13-101, *et seq.*

61. Plaintiff incorporates by reference all preceding paragraphs.

62. Plaintiff believed the Product's butter taste was only from butter and not from artificial flavoring ingredients which provided a butter taste.

63. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Violation of State Consumer Fraud Acts (Consumer Fraud Multi-State Class)

64. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

65. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

66. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

67. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that its butter taste was only from butter and not from artificial flavoring ingredients which provided a butter taste.

68. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print

9

circulars, direct mail, and targeted digital advertising.

69. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

70. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that its butter taste was only from butter and not from artificial flavoring ingredients which provided a butter taste.

71. Defendant affirmed and promised that the Product's butter taste was only from butter and not from artificial flavoring ingredients which provided a butter taste.

72. Defendant described the Product so Plaintiff and consumers believed its butter taste was only from butter and not from artificial flavoring ingredients which provided a butter taste, which became part of the basis of the bargain that it would conform to its affirmation and promises.

73. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

74. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Entenmann's brand, known for the highest quality ingredients.

75. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

76. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

77. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

78. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

79. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on its packaging, container, or label, because it was marketed as if its butter taste was only from butter and not from artificial flavoring ingredients which provided a butter taste.

80. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected its butter taste was only from butter and not from artificial flavoring ingredients which provided a butter taste, and she relied on Defendant's skill or judgment to select or furnish such a suitable product.

## Negligent Misrepresentation

81. Defendant had a duty to truthfully represent the Product, which it breached.

82. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, custodian of the Entenmann's brand.

83. The representations and omissions took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, a widely recognized and iconic brand.

84. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

## Fraud

85. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its butter taste was only from butter and not from artificial flavoring ingredients which provided a butter taste.

86. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

87. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Injunctive relief to remove, correct and/or refrain from the challenged practices;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   February 26, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com